```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

MICHAEL J. O'REILLY AND          :
JOHN T. O'REILLY,                :
                                 :
     Plaintiffs,                 :
                                 :
V.                               :    CASE NO. 3:06-CV-2008(RNC)
                                 :
THE CONNECTICUT LIGHT AND POWER  :
COMPANY, ET AL.,                 :
                                 :
     Defendants.                 :
```

RULING AND ORDER

Plaintiff Michael O'Reilly, who is disabled, and his father John, both proceeding pro se, bring this action against the Connecticut Light & Power Company ("CL&P") and others alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., the Fair Housing Act, 42 U.S.C. §§ 3601, et seq., the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1861 et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110b, and § 16-3-100 of the Regulations of Connecticut State Agencies.[1]  The case arises from actions taken by CL&P to collect an overdue account, including a lawsuit against the O'Reillys and others, which resulted in the entry of a default judgment in favor of CL&P.  Plaintiffs allege that CL&P was

---

[1] The ADA and FHA claims were originally brought by both plaintiffs and the complaint also included a claim under the Federal Trade Commission Act.  By summary order dated April 22, 2008 (doc. 35), John O'Reilly's claims under the ADA and FHA, and both plaintiffs' claims under the FTCA claim were dismissed.

frustrated by its inability to terminate their electric service due to Michael O'Reilly's disability and retaliated by bringing the lawsuit.  Pending are cross-motions for summary judgment and a defense motion concerning the competency of plaintiff Michael O'Reilly to proceed pro se.  For reasons that follow, defendants' motion for summary judgment is granted as to plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims, and the motion regarding Michael's competency is denied without prejudice.

I.   Background

Plaintiffs John and Michael O'Reilly live in a single-family residence in Guilford.  The residence is owned by a third party, Jeffrey Navin, who lives elsewhere.  CL&P provides electricity to the residence.  Mr. Navin and a man named Robert Cassidy, who also lives elsewhere, are the customers named on the account with CL&P.

Pursuant to § 16-3-100(b)(3)(c) of the Regulations of Connecticut State Agencies, CL&P follows a medical protection plan, which prevents it from terminating service to any home "during such time as any resident therein is seriously ill or in a life threatening situation, as certified to the utility company by a registered physician."  See Regs. Conn. State Agencies § 16-3-100(b)(3)(c).  Because of his medical condition, Michael O'Reilly has been listed on CL&P's protection plan for many

years, preventing CL&P from terminating service to the Guilford residence.  The regulations do not excuse customers of account from paying electric bills as they come due.  Nevertheless, for some time the electric bill for the Guilford residence has gone unpaid.

Some time in late 2003, CL&P brought suit against the O'Reillys, Navin and Cassidy in Connecticut Superior Court for unpaid electric service.  See The Connecticut Light and Power Co. v. Navin, et al., No. CV-03-0474190S (Conn. Super. Ct. Jan. 26, 2004).  None of the defendants appeared when the case was called for trial.  On January 26, 2004, the court entered a default judgment against them in the amount of $24,547.78.  On December 15, 2006, the O'Reillys brought this suit.

II.  Discussion

Summary judgment is appropriate when there is "no genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the evidence must be viewed in a light most favorable to the nonmoving party.  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  However, the nonmoving party may not rely on

"conclusory allegations or unsubstantiated speculation." Id. at 554.  A pro se party's submissions must be liberally construed to raise the strongest arguments they suggest.  Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

    A. Michael O'Reilly's Claim Under Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The amended complaint alleges that defendants have violated Title II by "seeking garnishment of wages and attachment of personal property and making motions for disclosure of assets, culminating in a default judgment against Plaintiff Michael O'Reilly in an effort to intimidate said Plaintiff and his family knowing well Plaintiff Michael O'Reilly's medical condition and the fact that Michael O'Reilly was not responsible in any way for the payment of electrical services."

Defendants contend that they are entitled to summary judgment on this claim because CL&P is not a public entity subject to the provisions of Title II and, in addition, because there is no evidence of disability discrimination.[2]

---

[2] Because "[i]ndividual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act," Menes v. CUNY, 92 F. Supp. 2d 294, 306

As defined in § 12131, a "public entity" includes, in addition to a state or local government, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131(1)(B). Defendants argue that, although CL&P is a public utility, it is not a public entity.[3] Neither the Second Circuit nor any other court of appeals appears to have decided whether a public utility qualifies as a public entity under Title II.[4] However, it has offered some general guidance on how to approach the question. In Green v. City of New York, 465 F.3d 65 (2d Cir. 2006), the Court considered whether a private hospital could be considered a public entity under Title II. Applying the maxim of *noscitur a sociis*, that a word is known by the company it keeps, the Court determined that the word "instrumentality" in § 12131(1)(B) refers to a "creature of a state or municipality." Id. at 79. This meant that the private hospital in Green was not subject to liability under Title II. The same is not necessarily true of

---

(S.D.N.Y. 2000), the claims in count one are dismissed as to the individual defendants.

[3] Plaintiff mistakenly argues that CL&P's status as a public entity under Title II was already determined in the summary order of April 22. In the summary order, the Court ruled that the record as it then existed was insufficient to permit a determination of the issue.

[4] In Zibbell v. Granholm, 2008 WL 1766588, at *6 (W.D. Mich. April 14, 2008), the plaintiff failed to prove that a public utility was a public entity for purposes of Title II. No other reported cases addressing the issue have been found.

5

CL&P, however, because it is a "corporation specially chartered by the General Assembly of the State of Connecticut." (Defs.' Mem. Summ. J. Ex. 2 ¶ 8.)

Whether CL&P is a public entity need not be decided because, even assuming it is, plaintiff Michael O'Reilly has failed to present sufficient evidence to permit a jury to find that CL&P has denied him benefits or discriminated against him "by reason of [his] disability." 42 U.S.C. § 12132. It is undisputed that no benefits have been denied; CL&P has continually provided service to the Guilford residence. To prevail, therefore, plaintiff must offer sufficient evidence to permit a jury to find that CL&P has discriminated against him because of his disability - in other words, has treated him differently than a similarly situated person with no disability. Plaintiff offers no such evidence. In particular, he offers no evidence that CL&P has refrained from suing beneficiaries of its service who are not disabled.

### B. Michael O'Reilly's FHA Claim

Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The amended complaint alleges that CL&P pressured Navin to evict the O'Reillys from the Guilford residence in violation of

this statute.

Defendants contend that they are entitled to summary judgment on this claim principally on the ground that the statute applies only to landlords.[5] It is not clear that the statute is so limited. See Puglisi v. Underhill Park Taxpayer Assoc., 947 F. Supp. 673, 696 (S.D.N.Y. 1996) (noting that courts have interpreted § 3617 to extend "beyond the activities of housing providers"), *aff'd* 125 F.3d 844 (2d Cir. 1997); People Helpers, Inc. v. City of Richmond, 789 F. Supp. 725, 731 (E.D.Va. 1992) ("Although most of the legislation is designed to prevent illegal discrimination on the part of housing providers, one provision [§ 3617] specifically prohibits unrelated third parties from interfering with anyone who is attempting to aid others protected under the Act from obtaining housing of their choice."). Accordingly, I consider the claim on the merits.

Plaintiff's claim, liberally construed, implicates § 3604(f), which makes it unlawful to "discriminate in the sale

---

[5] In the alternative, defendants argue that even if the FHA applies, they are immune from liability under the Noerr-Pennington doctrine. See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965). This doctrine is applied to "immunize[] from liability a party's commencement of a prior court proceeding." Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 93 (2d Cir. 2002). The doctrine applies when the prior suit was not a "sham." Id. Defendants argue that CL&P's state suit against plaintiffs could not have been a sham because it resulted in a default judgment. But a default judgment "does not *ipso facto* constitute a determination of the 'objective reasonableness' of the lawsuit." Id. at 94.

or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap."  42 U.S.C. § 3604(f)(1).  The claim is that defendants violated § 3617 by "coerc[ing], intimidat[ing], and threaten[ing]" Navin to such an extent that he undertook to evict the O'Reillys, which would have made the Guilford residence "unavailable" to them because of Michael's disability.  (See Pl.'s Mem. Summ. J. at 8.)

Assuming for argument's sake that this states a claim for relief under the statute, the claim fails for lack of evidence.  John O'Reilly's deposition testimony indicates that Navin asked him if there was "any chance" the O'Reillys could move out of the Guilford residence because the situation was "killing him."  This is insufficient to permit a jury to find that CL&P actually coerced, intimidated or threatened Navin in order to get him to evict the O'Reillys because of Michael's disability.

C. Plaintiffs' Claims Under the FDCPA

In count two of the amended complaint, both plaintiffs claim that CL&P violated the FDCPA by using "false, deceptive, or misleading representations or means" to collect a debt.[6]

---

[6] Specifically, plaintiffs allege violations of 15 U.S.C. §§ 1692e(2)(A), which prohibits false representation of "the character, amount, or legal status of a debt"; 1692e(2)(B), which prohibits false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt"; 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt

Plaintiffs contend that because they were not customers of account, they owed no debt to CL&P and therefore any attempt to collect the debt violated the statute.  Defendants contend that this claim must be dismissed because none of them is a "debt collector" as defined in the statute.  I agree.

The statute applies only to "debt collectors."  Section 1692a(6) defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The actions at issue here were undertaken by CL&P in an attempt to collect its own debts, and none of the defendants' principal business is debt collection.

D. <u>Plaintiffs' State Law Claims</u>

In count three of the amended complaint, plaintiffs allege violations of § 16-3-100 of the Regulations of Connecticut State Agencies and of the Connecticut Unfair Trade Practices Act.  These claims raise the issue whether it is permissible for a power company to attempt to collect a debt from persons who live in a residence but are not customers of account.  Plaintiff contends that this violates § 16-3-100 and is an unfair trade

---

is disputed"; and 1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

practice under CUTPA.  The issue has been raised before in state court but apparently never decided.  See Connecticut Light and Power Co. v. Gilmore, 875 Conn. App. 164, 180 (2005).  Because the law is unsettled, I decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

    E.  Plaintiffs' Motion for Summary Judgment

Plaintiffs have moved for summary judgment on all their claims.  They rely on essentially the same arguments advanced in their memorandum in opposition to the defendants' motion for summary judgment.  For the reasons discussed above, these arguments are unavailing.

    F.  Motion Regarding Michael O'Reilly's Pro Se Status

CL&P has moved for a determination of whether Michael O'Reilly is legally capable of representing himself in this action.  Michael is the only plaintiff with standing to pursue the ADA and FHA claims in counts one and two.  His father, who is no longer a party to these counts, is not a licensed attorney.  Though Rule 11© of the Federal Rules of Civil Procedure permits John O'Reilly, as Michael's legal guardian, to bring an action on Michael's behalf, it does not permit him to serve as Michael's legal counsel.  See Iannocone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause."); cf. Cheung v. Youth Orchestra Found. of Buffalo, Inc.,

906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.  The choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions.  There is thus no individual choice to proceed pro se for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.") (internal citation omitted).

In response to CL&P's motion, plaintiffs have asserted that Michael is competent to represent himself.  John O'Reilly, purporting to speak on behalf of his son, has represented that Michael understands the issues in the case, has been an active participant in all important decisions regarding the case, and is merely relying on his father to communicate his views to the Court.

Whether Michael is competent to represent himself cannot be definitively determined without an evidentiary hearing, possibly including expert testimony.  This would be costly for both sides.  I am convinced that if qualified counsel were to appear for Michael, it would not change the outcome with regard to the federal claims.  Accordingly, I decline to order a hearing on the motion regarding Michael's pro se status and deny the motion without prejudice.

VI.  Conclusion

    For the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiffs' federal claims, which are dismissed with prejudice; the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, which are dismissed without prejudice to refiling in state court; plaintiffs' motion for summary judgment is denied; and defendants' motion regarding Michael O'Reilly's ability to proceed pro se is denied without prejudice.

    So ordered this 2d day of February 2009.

```
                              /s/ RNC
                         Robert N. Chatigny
                    United States District Judge
```